# CIRCUIT COURT OF THE CITY OF NORFOLK

Gina M. Collett

v.

City of Norfolk

August 24, 2012

Case No. (Civil) CL11-3510

By Judge Junius P. Fulton, III

This matter came before the Court on July 31, 2012, for argument on plaintiff's motion to reconsider this Court's order of March 8, 2012, sustaining demurrers to Count I and Count II of the amended complaint and for hearing on defendant's demurrer to the second amended complaint. At the conclusion of the hearing, the Court reserved ruling to allow an opportunity to consider the pleadings, applicable case law, and argument of counsel.

*Reconsideration of Ruling Concerning Count I*

Under Count I, the plaintiff claims entitlement to redress pursuant to Article I, Section 11, of the Virginia Constitution for the unlawful taking of and damage to her property without compensation. Collett seeks to enforce these rights by using an inverse condemnation suit as specified in *Kitchen v. City of Newport News*, 275 Va. 378, 386 (2008). In order to state a claim for inverse condemnation, the petitioner must allege:

(1) She owns private property or has some private property right; (2) the property or right connected to that property has been taken or damaged by the government or a body with condemnation authority; (3) the taking or damaging was for "public use"; and (4) the government or condemning authority failed to pay just compensation.

*Close v. City of Norfolk,* 82 Va. Cir. 636, 640 (2009).

Given that there is no contest regarding the first and last elements above, the Court's analysis pertains to whether Ms. Collett's property has been "taken" and/or "damaged" by a government or a body with condemnation authority.

Pursuant to Article I, Section 11, of the Virginia Constitution, "[p]roperty is considered taken . . . if the government's action deprives the property of all economic use." *Supervisors of Prince William County v. Omni Homes, Inc.,* 253 Va. 59, 72 (1997). Additionally, property is considered "damaged for Virginia constitutional purposes when an appurtenant right connected with the property is directly and specially affected by a public use and that use inflicts a direct and special injury on the property which diminishes its value." *Id.*

In this case, Collett did not plead that she has been deprived of all economic use of her property. In fact, Collett states that the flooding displaced her from her home on various occasions, but this implies that she is still primarily residing in the home. (2d Amd. Compl. ¶ 16.) Using the property for residential purposes leaves a viable economic use for the property. Thus, Collett cannot state a claim for a taking.

However, Collett does allege that water and debris have negatively impacted the value or impaired the highest and best use for her property. (2d Amd. Compl. ¶ 17.) This will suffice, if she sufficiently alleges that the property is negatively affected due to a *public use*. (Emphasis added.)

The Constitution of Virginia states "that the General Assembly shall not pass . . . any law whereby private property shall be taken or damaged for public uses, without just compensation, the term "public uses" to be defined by the General Assembly." Va. Const., Art. 1, § 11. Public uses are defined to include only the acquisition of property where:

(i) the property is taken for the possession, ownership, occupation, and enjoyment of property by the public or a public corporation; (ii) the property is taken for construction, maintenance, or operation of public facilities by public corporations or by private entities provided that there is a written agreement with a public corporation providing for use of the facility by the public; (iii) the property is taken for the creation or functioning of any public service corporation,

public service company, ·or railroad; (iv) the property is taken for the provision of any authorized utility service by a government utility corporation; (v) the property is taken for the elimination˙ of blight provided that the property itself is a blighted property; or (vi) the property taken is in a redevelopment or conservation area and is abandoned or the acquisition is needed to clear title where one of the owners agrees to such acquisition or the acquisition is by agreement of all the owners.

Va. Code § 1-219.1(A).

When the taking or damaging of property occurred due to flooding, the flooding must be caused by the public use. The key element to determine if it was caused by a public use is whether the government was in control of the instrumentality that was designed to deal with the source of the flooding, storm water. Where the requisite elements are present, the government is obligated to pay for affirmative and purposeful acts causing damage, as well as for damages caused by the government's failure to act. *Livingston v. Virginia Dep't of Transp.*, 284 Va. 14, 158, 726 S.E.2d 264, 274 (2012).

Collett relies upon the decision in *Kitchen* and *Livingston*; however, both cases concern governmental authorities making choices not to maintain an instrumentality *in their control created to adequately deal with excess storm water*. In this case, Collett alleges that the City took her property by issuing a fill permit to the adjoining property owners and not effectively enforcing the City Code. After receiving the fill permit, the adjoining property owners did not install a retaining wall, which was a condition of the fill permit. The City sent several letters informing the adjoining property owners that they were in violation. Eventually, the adjoining property owners did install a berm, and the City approved the berm. However, Collett claims that this berm is inadequate, and this inadequacy has led to damage to her property.

Thus, the only actions or inactions alleged against the City concern the issuance of the fill permit, inspection of the property to force compliance, approval of the berm, and the failure to make the adjoining property owners comply sooner. Furthermore, none of the reasons given for issuance of the permit constitute public uses pursuant to Va. Code § 1-219.1(A). In fact, the taking or damaging of property in order to grow the real estate tax base is expressly prohibited. *Id.* at § 1-219.1(d)(ii). If the City owned the berm or the adjoining property owners dedicated it to the City, even if the City took no affirmative action, this would be a different case. However, the pleadings clearly show that the City does not own the adjoining property, did not complete the construction or alteration to the adjoining property, and the adjoining property is being used for completely private purposes. Collett also does not allege that the City's storm water disposal system

contributed to the problem. Thus, this case is completely distinguishable from *Livingston* and *Kitchen*.

Consequently, the Court denies Collett's motion to reconsider with regards to Count I as it does not state a claim.

### Reconsideration of Count II

Under Count II, Collett claims entitlement to redress pursuant to 42 U.S.C. § 1983 for the unlawful taking of and damage to the Plaintiff's property in violation of the Fifth and Fourteenth Amendments to the United States Constitution. (2d Amd. Compl. ¶¶ 29 & 31.)

Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

A plaintiff alleging a violation under 42 U.S.C. § 1983 must prove: "that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Phillips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

First, Collett alleges that the City of Norfolk deprived her of her Fifth Amendment rights. The relevant portion of the Fifth Amendment states, "nor shall private property be taken for public use, without just compensation." U.S. Const., Amend. V. The Fifth Amendment applies to the States through the Fourteenth Amendment. *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 160 (1980). Under the Fifth Amendment, "regulations that deny 'all economically beneficial or productive use of land' are compensable takings." *Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 285 (4th Cir. 1998) (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 120 L. Ed. 2d 798, 112 S. Ct. 2886 (1992)). Thus, in order to assert a takings claim under the Fifth Amendment based on a theory of inverse condemnation, the plaintiff must allege that state action has deprived him of "any" economically viable use of his property. *Wilson v. City of Salem*, 55 Va. Cir. 270, 277 (2001).

In this case, as discussed concerning Count I, Collett has not alleged that she has been deprived of all economic uses of her property. In fact, based

on the pleading, it would appear that Collett is still using the home as her primary residence. (2d Amd. Compl. ¶ 16.) Thus, Collett has not stated a claim for the violation of her Fifth Amendment rights.

Additionally, Collett alleges that the City of Norfolk deprived her of procedural due process under the Fourteenth Amendment. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Lee v. City of Norfolk*, 281 Va. 423, 427 (2011) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)).

However, a property owner has the ability to receive compensation by filing an inverse condemnation action pursuant to Virginia's declaratory judgment statute. *Presley v. City of Charlottesville*, 464 F.3d 480, 490 (4th Cir. 2006). Thus, since there is an adequate procedure for receiving compensation in the event of a taking, there is no denial of due process. *Id.* In this case, the Plaintiff had the opportunity to, and did, file an inverse condemnation suit to receive just compensation. Thus, she has not suffered a violation of the procedural due process clause of the Fourteenth Amendment.

Consequently, the Court will also deny Collett's motion for reconsideration as to Count II of the amended complaint.

*Demurrer*

The remaining issue for consideration by the Court is the demurrer filed to Collett's second amended petition for declaratory judgment. Counts I and II of the second amended petition for declaratory judgment essentially allege the same theories contained in Count I and II of the amended petition for declaratory judgment, which was dismissed without leave to amend. Consequently, review of those counts is unnecessary.

However, this Court's ruling of March 8, 2012, sustaining the City's demurrer to Count III of the amended petition, did grant leave to amend "in order to allege the necessary elements of any claims relating to a violation of any right ensured by the Constitution of the United States and any claims resulting from acts committed under color of any statute, ordinance, regulation, custom, or usage, pursuant to the remedies set forth in 42 U.S.C. § 1983." Thus Count III of Collet's second amended petition asserts that the City of Norfolk improperly inversely condemned her property for private use in violation of Article I, Section 11, of the Virginia Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. The City demurs, asserting that Count III fails to allege the necessary elements for relief under Article I, Section 11, of the Virginia Constitution or a 42 U.S.C. § 1983 action for violations of the Fifth and Fourteenth Amendments of the United States Constitution.

In considering a demurrer, a court does not "evaluate and decide the merits of a claim; [a demurrer] only tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action." *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Rds., Inc. v. Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)). A demurrer does not, however, "admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988) (citation omitted).

To survive a demurrer, an inverse condemnation claimant is required to plead sufficient facts to constitute a foundation in law for the judgment sought, and not mere conclusions of law, which allege government action in limiting property rights the landowner holds. *Kitchen v. City of Newport News*, 275 Va. 378 (2008).

First, Collett alleges that her property has been taken or damaged for the private use and benefit of the adjoining landowners, Boone and Decker. She claims relief under both Article I, Section 11, of the Virginia Constitution and the Fifth and Fourteenth Amendments of the Constitution of the United States. However, the City argues that Article I, Section 11, has no application to "tortious or unlawful conduct, whether by contractors engaged in constructing public improvements, governmental agents, or third parties who are strangers to the condemnation proceedings." *State Hwy. & Transp. Comm'r of Va. v. Lanier Farm, Inc.*, 233 Va. 506, 511, 357 S.E.2d 531, 534 (1987). Because the City of Norfolk is not permitted by law to take private property for a private use, it follows that to do so would be unlawful. Consequently, Article I, Section 11, does not apply. *Lanier Farm*, 233 Va. at 511. Additionally, as stated above, Collett has not sufficiently alleged a taking because she has not been deprived of all economic uses of her property. *Supervisors of Prince William County v. Omni Homes, Inc.*, 253 Va. 59, 72 (1997).

Second, Collett alleges that she is entitled to redress pursuant to 42 U.S.C. § 1983, due to the City of Norfolk's unlawful taking of and damage to the Plaintiff's property for private use and benefit of Boone and Decker in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

A plaintiff alleging a violation under 42 U.S.C. § 1983 must prove "that the charged state actor (1) deprived plaintiff of a right secured by the Constitution and laws of the United States and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." *Phillips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Collett has pleaded that her property was improperly taken for a private use. However, the Fifth Amendment only protects against private property being taken for a public use. See *San Diego Gas & Elec. Co. v. City of San Diego*, 450 U.S. 621, 656, n. 23 (1981). Furthermore, Collett has not alleged that she has been deprived of all economic uses of her property. Additionally, Collett has not alleged sufficiently that any action taken improperly by the City of Norfolk was done so under color of law as required under 42 U.S.C § 1983. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L.Ed.2d 611, 638 (1978). In order for a local government to have liability, there must be an injury inflicted from the "execution of a government's policy or custom, whether by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.*

"A § 1983 plaintiff thus may be able to recover from a municipality without adducing evidence of an affirmative decision by policy-makers if able to prove that the challenged action was pursuant to a state 'custom or usage'." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, n. 10 (1986). Custom exists pursuant to § 1983, when there are "persistent and widespread . . . practices of [municipal] officials [which] although not authorized by written law, [are] so permanent and well-settled as to [have] the force of law." *Monell*, 436 U.S. at 690-91. Therefore, a custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). Actual knowledge can be demonstrated "by recorded reports to or discussions by a municipal governing body," while constructive knowledge can be shown by facts that demonstrate "the practices have been so widespread or flagrant that, in the proper exercise of its official responsibilities, the governing body should have known of them." *Id.*

In this case, Collett alleges not only did the City of Norfolk purport to act based upon local, state, and federal laws relating to drainage and flooding issues, but upon information and belief, the City's tolerance for violations by developers, such as the one involved in this legal claim, is typical to the point of being customary and normal for the City of Norfolk. In other words, in order to promote the development of property and increase the City's tax base, the City has demonstrated a willingness to tolerate drainage violations, such as those involved here.

Collett attempts to allege that the actions of the employees were taken due to the City of Norfolk custom. However, there are no allegations that the City of Norfolk was actually or constructively aware of the constitutional violations of the individuals issuing and enforcing the permits. In addition, there are no allegations of other violations to demonstrate this was anything

more than an isolated incident, other than a conclusory allegation that "it is typical to the point of being customary and normal." *Id.* However, no facts have been alleged to support this conclusion.

Consequently, for the foregoing reasons, reconsideration of Counts I and II of the Amended Petition for Declaratory Judgment is denied, and the demurrer to Count III of the Second Amended Petition for Declaratory Judgment will be sustained without leave to amend.